UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WAYNE BERNARD,

       Plaintiff,                          Case No. 12-cv-13992
                                            Hon. Matthew F. Leitman

v.

DETROIT PUBLIC SCHOOL
DISTRICT *et al.*,

       Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF #22)

## INTRODUCTION

      This is a civil-rights action brought by Plaintiff Wayne Bernard ("Bernard"), a former employee of Defendant Detroit Public School District ("DPS"). On September 10, 2009, Bernard spoke during the public comment portion of a meeting held by the DPS Board of Education (the "Board"). During his remarks, Bernard announced to the Board that he was about to reveal the personal employee identification numbers of certain DPS employees. Bernard had previously read (or attempted to read) these numbers at earlier Board meetings, and, according to Board President Defendant Carla Scott ("Scott"), that resulted in "havoc." In order to avoid another major disruption, Scott cut off Bernard before he could read the file numbers and asked that security escort him from the room. Bernard was

1

subsequently arrested and charged with disorderly conduct and, later, with disrupting a public meeting.  Both charges were eventually dismissed.

On September 10, 2012, Bernard filed this action against DPS, Scott, and the police officers he claims were involved in his arrest.  (*See* the "Complaint," ECF #1.)  Among other things, Bernard claims that Scott violated his First Amendment rights when she cut off his remarks to the Board and that his civil rights were violated when he was arrested and prosecuted.  (*See generally, id.*)  Defendants have now moved for summary judgment.  (*See* the "Motion," ECF #22.)  For the reasons that follow, the Court **GRANTS** Defendants' Motion.

## FACTUAL BACKGROUND

In October 2008, Bernard worked for DPS as an aerial tower operator, earning $15.00 per hour.  (*See* Bernard Dep., ECF #27-1 at 14, Pg. ID 363.)  In early November 2008, DPS laid off Bernard from his job.  (*See id.* at 13-14, Pg. ID 362-363.)  Bernard says that he was told DPS eliminated his job due to "economic necessity."  (*Id.* at 16, Pg. ID 365.)  Bernard asserts, however, that at this same time, other DPS employees were "receiving overtime when [Bernard] was [purportedly] laid off for economic necessity."  (*Id.* at 52, Pg. ID 401.)  Upset over DPS's budget practices, Bernard attended Board meetings and spoke during the time allotted for public comment.

2

Defendant Carla Scott ("Scott") was the President of the Board from 2009-2011.  (*See* Scott Dep., ECF #27-2 at 7, Pg. ID 467.)  According to Scott, on several occasions during her tenure as President, Bernard would speak during the time dedicated to public comment, and he would "read [out loud] people's [employee] file numbers," which were "private numbers attached to particular [DPS] employees."  (*Id.* at 19, Pg. ID 479.)  Scott explained that when Bernard disclosed, or attempted to disclose, these file numbers, he "caused [] a disturbance at the Board meeting…People would get upset, they would start yelling…It [would] cause[] a lot of havoc at the meetings."  (*Id.* at 20, Pg. ID 480.)  (*See also id.* at 24, Pg. ID 484 ("Every time [Bernard] attempted to read off the file numbers, it caused a problem" in the audience).)  Scott therefore told Bernard that he "cannot do that [i.e., publically disclose the numbers] and [she] would make him stop, or [she] would turn off the mic[rophone]" when he attempted to read them out loud.  (*Id.* at 20, Pg. ID 480.) (See *also id.* at 23-24, Pg. ID 483-484 ("At subsequent Board meetings, [] Bernard attempted to [read off the file numbers] again; and [Scott] never let him.  [Scott] always stopped [Bernard] from reading the numbers").)

On September 10, 2009, Bernard attended a Board meeting and he spoke during the time allotted for public comment.  Bernard first discussed a number of issues without incident or interruption.  (*See* Bernard Dep. at 46-49, Pg. ID 395-

3

398.)  Then Bernard announced to the Board that he was once again going to read aloud the employee file numbers of the DPS employees he believed to be receiving overtime compensation.[1]  (*Id.*)

When Bernard threatened to disclose the file numbers, Scott stopped him and asked security to remove him from the meeting.  According to Scott:

> So when [Bernard] got up this time and said, "I'm going to read these file numbers" – and the reason why he said that [is] because he already knew that I wasn't going to allow him to read the file numbers because I cannot have him inciting a riot at the Board meeting.  It's just not going to be allowed.
>
> Then I had him removed because, number one, I believe the information to be private because that's what I had been told.  Then number two is because it incites such a disturbance at the Board meeting that – and it has – to me, stating those numbers has nothing to do with whatever your comment is about.  You should be able to say without giving people's personal information out.
>
> [….]
>
> So that's why I had him removed, because I just – I just can't have him, you know … having a huge hullabaloo.  I just didn't want a riot at the meeting.

(Scott Dep. at 20-21, Pg. ID 480-481.)

---

[1] It is unclear from the record whether Bernard actually had the file numbers in his possession when he spoke to the Board on September 10, 2009.  It appears, based on his deposition testimony, that Bernard could not actually "read [the file numbers] off because they were blackened out" on the papers he had at that time. (Bernard Dep. at 46, Pg. ID 395; *see also id.* at 61, Pg. ID 410 ("[Bernard] couldn't read their numbers because [the numbers] were blackened out").)

4

Bernard was escorted from the meeting by members of the Detroit Public Schools Police Department, including (apparently) Defendants Lance Granberry ("Granberry") and Kelley Mays ("Mays"). As he was being escorted out of the room, Bernard loudly told the officers to keep their hands off of him, and he repeatedly yelled "you're going to get sued; you're going to get sued." (*See* video of the incident, ECF #30; *see also* Scott Dep. at 67-68, Pg. ID 527-28 – confirming that Bernard was "still yelling, you know, as he was walking out.")

Bernard says that after he was taken into the hallway, he was surrounded by Granberry, Mays, and two other officers, Defendant Deborah Crane ("Crane") and Defendant Dennis Richardson ("Richardson"). (*See* Bernard Dep. at 69, Pg. ID 418.) Defendant Roderick Grimes ("Grimes") supposedly stood "off on the side." (*Id.*) Bernard says that Crane then "got up in [his] face" and gave an order that he be arrested. (*Id.* at 70, Pg. ID 419.) Granberry then grabbed Bernard's arm and Richardson handcuffed him. (*See id.* at 71, Pg. ID 420.) Bernard was ultimately transported to a police station for processing. (*See id.* at 72-73, Pg. ID 421-422.)

At some point, Granberry purportedly told Bernard that he was being arrested because he "raised [his] voice and [] was disorderly in the meeting." (*Id.* at 71, Pg. ID 420.) According to Bernard, Granberry said that "he [Granberry] could hear [Bernard] all the way out in … the hallway." (*Id.* at 72, Pg. ID 421.)

Following his arrest, Bernard was charged with disorderly conduct in violation of the Detroit City Code. (*See* September 22, 2009, Warrant, ECF #27-6, Pg. ID 556-557.) Mays was listed on the warrant as the "victim or complainant." (*See id.*) That charged was dismissed. (*See* Bernard Dep. at 81-82, Pg. ID 430-431.) Bernard was then charged with a new offense for his conduct before the Board: disturbing a public meeting. (*See* April 7, 2010, Warrant, ECF #27-7, Pg. ID 559-560.) Mays was again listed as the "victim or complainant." (*see id.*) That charge was also subsequently dismissed. (*See* Bernard Dep. at 81-82, Pg. ID 430-431.)

## PROCEDURAL HISTORY

Bernard filed this action against DPS, Scott, Grimes, Richardson, Crane, Mays, and Granberry on September 10, 2012. (*See* Compl.) The Complaint, brought pursuant to 42 U.S.C. § 1983, includes six separate counts:

- In Count I, Bernard claims that Scott and DPS violated his First Amendment rights when they refused to allow him to "speak publicly at the appropriate time in a regularly scheduled meeting." (*Id.* at ¶34.)

- In Count II, Bernard alleges that all Defendants brought "a false and baseless charge against [him] [] in retaliation for [his] attempted exercise of his First Amendment rights." (*Id.* at ¶38.)

- In Count III, Bernard claims that Defendants Grimes, Richardson, Crane, Mays, and Granberry "falsely arrest[ed] and detain[ed] [him] with no basis in fact or law to do so." (*Id.* at ¶41.)

6

- In Count IV, Bernard alleges that DPS and Defendants Grimes, Richardson, Crane, Mays, and Granberry are liable for malicious prosecution with respect to the criminal charges brought against him.  (*See id.* at ¶¶43-44.)

- In Count V, Bernard asserts that Defendants Scott, Grimes, Richardson, Crane, Mays, and Granberry conspired to generate a false police report and wrongfully prosecute him.  (*See id.* at ¶¶46-47.)

- Finally, in Count IV, Bernard seeks to hold DPS liable for the conduct of the other Defendants.  (*See id.* at ¶49.)

Defendants moved for summary judgment on October 14, 2014.  (*See* Mot.) Defendants claim they are entitled to qualified immunity and that Bernard has not presented sufficient evidence to support his claims. (*See id.*)  The Court heard oral argument on Defendants' Motion on April 15, 2015.

## <u>GOVERNING LEGAL STANDARD</u>

A movant is entitled to summary judgment when he "shows that there is no genuine dispute as to any material fact...." *U.S. SEC v. Sierra Brokerage Services, Inc.,* 712 F.3d 321, 326–27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986)) (quotations omitted). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson,* 477 U.S. at 252.  However, summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-252.

7

When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* Indeed, "[c]redibility determinations, the weighing of the evidence, and the drafting of legitimate inferences from the facts are jury functions, not those of a judge…" *Id.* at 255.

## ANALYSIS

### A.    The Qualified Immunity Standard

All Defendants have moved for summary judgment, at least in part, on the basis of qualified immunity. "Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (internal citation omitted).

The qualified-immunity analysis involves a burden-shifting framework. Defendants "bear[] the initial burden of coming forward with facts to suggest [they] acted within the scope of [their] discretionary authority during the incident in question." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). Ultimately, however, Bernard must establish that the Defendants are not entitled to qualified immunity. Bernard can satisfy this burden by showing that (1) "a

8

constitutional right was violated," and (2) "that the right was clearly established at the time of the violation." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009) (internal citations omitted). The Court has discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## A.   Scott Is Entitled to Summary Judgment on All of Bernard's Claims Brought Against Her

### 1.   Scott is Entitled to Qualified Immunity With Respect to Bernard's First Amendment Claim

Scott argues that she is entitled to qualified immunity with respect to Bernard's claim that she interfered with his right to free speech when she cut off his address to the Board on September 10, 2009. (*See* Mot. at 14-17, Pg. ID 140-143.) The Court agrees.

First, Scott has established that she was acting within her discretionary authority when she stopped Bernard from speaking and had him escorted from the room when he threatened to read the employee file numbers. Scott has presented evidence that as President of the Board, she was authorized to order the removal of persons like Bernard whom she believed to pose a threat to the order of the meeting. (*See* Board Policy 3.20, ECF #22-3; Board Policy 3.23, ECF #22-4; and Board Policy 3.22, ECF #22-5.) Scott has also presented evidence that Board

9

meetings were often chaotic; that when Bernard either read the employee file numbers or attempted to do so in the past, his actions caused substantial disruptions; and that she had Bernard removed from the September 10, 2009, meeting because his threat to read employee file numbers created a serious risk of causing a disturbance. (*See, e.g.,* Scott Dep. at 19-25, Pg. ID 479-485.)  Scott has therefore established that she was exercising her discretionary authority to keep order at Board meetings when she had Bernard removed.

Bernard counters that under the Board's rules, Scott lacked the authority to take this action without first issuing him a warning. (*See* Bernard Resp., ECF #27 at 2, Pg. ID 325.)  However, the applicable Board policy unambiguously states that "persons … [attending a meeting] shall not engage in any kind of behavior which disrupts the school board meeting being conducted" and that the chairperson (*i.e.*, Scott) "*at his or her discretion* shall issue one general warning before security personnel will be directed to remove and ticket the person…" (Board Policy 3.22, ECF #27-5 at 3, Pg. ID 554; emphasis added.)  Scott plainly did not have to issue a warning to Bernard before having him removed from the room.  Furthermore, and in any event, the Court has reviewed the video of the incident the parties have provided (*see* ECF #30), and at 38:00-38:10 of that video, Scott tells Bernard that he cannot read the file numbers, and Bernard responds that he is "not done" with his statement to the Board, and he specifically again threatens to read the numbers.

10

Only then did Scott have Bernard escorted from the meeting.  The Court construes Scott's statement to Bernard as a warning that he could not proceed to read the numbers aloud.  Moreover, Scott testified that she also had warned Bernard, at multiple other meetings, that he was not allowed to read the employee file numbers out loud.  (*See* Scott Dep. at 20, Pg. ID 480.)

With Scott having established that she was acting within her discretionary authority, the burden shifts to Bernard to show that Scott is not entitled to qualified immunity.  Bernard has not satisfied his burden to show that Scott's conduct violated a clearly established constitutional right.  "A defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.  In other words, existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate." *Wenk v. O'Reilly*, --- F.3d ---, 2015 WL 1652548, at *11 (6th Cir. Apr. 15, 2015) (quoting *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014)).  "A right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point." *Id.* (quoting *Gaspers v. Ohio Dep't of Youth Servs.,* 648 F.3d 400, 417 (6th Cir. 2011)).  "The 'clearly established law' should not be defined 'at a high level of generality, since doing so avoids the crucial question whether the official acted

11

reasonably in the particular circumstances that he or she faced.'" *Id.* (quoting *Plumhoff*, 134 S.Ct. at 2023).

Bernard has failed to show that he had a clearly established First Amendment right to engage in speech at a public meeting – here, reading personal employee file numbers – where that same speech had previously created serious disturbances. Bernard has not cited a single case to the Court – much less one from the Supreme Court, the Court of Appeals for the Sixth Circuit, or this Court – in which any court has held that the presiding officer of a public meeting may not prevent a speaker from engaging in speech that previously caused chaos and disruption and that could reasonably be anticipated to cause a serious disruption once again.

The only case Bernard does cite concerning First Amendment rights at public meetings, *McBride v. Village Michiana*, 100 F.3d 457 (6th Cir. 1996), is inapposite. The plaintiff in *McBride*, a reporter, claimed that government employees retaliated against her for her "less-than-glowing accounts of representative democracy in Southern Michigan." *Id.* at 459. The plaintiff-reporter also asserted that the government officials threatened to boycott her newspaper, urged her newspaper to take her off the government beat, and threatened to remove her from a press table at a city council meeting. *See id.* *McBride*, though, does not speak to the question presented here: namely, whether a

12

speaker has a First Amendment right to make statements during a public meeting that have previously created chaos in the audience and which could be anticipated to cause such a disturbance again.

Bernard has simply not cited any authority to support his claim that he had a clearly established First Amendment right to engage in his proposed speech despite (1) its prior disruptive consequences and (2) Scott's reasonable, experienced-based fear that the consequences would ensue once again.  Such authority may exist.  It is certainly possible that courts have recognized that a person chairing a public meeting may not silence a speaker based upon a reasonable anticipation that his repetition of previously disruptive speech will once again be disruptive.  Courts may also have held that a meeting chair must wait until a disturbance actually occurs before silencing a speaker.  But Bernard has not directed this Court to any such case, and it is not this Court's obligation to conduct Bernard's research for him.[2]  Moreover, Bernard's claimed First Amendment violation seems especially weak in light of the fact that Scott *would* have allowed Bernard to make his desired point that the Board was incurring wasteful overtime expenses if he had simply refrained from attempting to read the personal employee file numbers.  (*See* Bernard Dep. at 46-49, Pg. ID 395-398 (where Bernard testifies that he was able to

---

[2] This Court makes no holding as to whether Bernard had a First Amendment right to engage in his proposed speech.  The Court holds only that Bernard has failed to carry his burden to establish that he had a clearly-established right to engage in the speech.

13

speak to the Board on other topics without interruption during the meeting in question).)  Bernard has not cited any authority to support his argument that he had a First Amendment right to disclose personal employee information as part of his effort to comment on the public issue of overtime expenses.[3]

Because Bernard has not met his burden to show that Scott violated a clearly-established constitutional right, Scott is entitled to qualified immunity on Bernard's claim that Scott violated his First Amendment rights.

## 2.    Bernard Has Produced No Evidence Scott Was Involved in His Arrest and/or Prosecution in Any Way

In addition to alleging that Scott violated his First Amendment rights, Bernard also seeks to hold Scott liable for his arrest and prosecution, and for conspiring with the other Defendants to have him arrested and prosecuted.  But Bernard has not presented any evidence connecting Scott to his arrest or prosecution.

---

[3] In his brief, Bernard argues that the employee numbers were public information. (*See* Resp. Br. at 3, Pg. ID 326.)  Bernard says that DPS gave him the numbers in response to a Freedom of Information Act ("FOIA") request.  (*See id.*)   But Bernard has not identified sufficient evidence to support his claim that the numbers were public information.  Indeed, Bernard admitted during his deposition that the numbers were blacked out on many documents that he received from DPS in response to his FOIA requests. (*See* Bernard Dep. at 61-62, Pg. ID 410-11 – noting that "[a]ll the ones I had were blackened out" – and at 22 & 46, Pg. ID 371 & 395.) While there are ambiguous portions of Bernard's testimony that arguably indicate that he may have received a limited number of documents from DPS in which the employee numbers were listed (*see* Bernard Dep. at 22, Pg. ID 371), there is no evidence that DPS knowingly or intentionally provided the numbers to Bernard nor that DPS ever acknowledged that the numbers were public information.

Scott testified that when she asked security to remove Bernard from the meeting, she did not intend for Bernard to be arrested, and she explained that if he was arrested, "something else [must have] happened" either during or after security removed him. (Scott Dep. at 56, Pg. ID 516.)  There is no evidence in the record that Scott asked security to arrest Bernard.  Indeed, Bernard confirmed that he only heard Scott call for security and that he never heard her ask security to arrest him. (*See* Bernard Dep. at 66, Pg. ID 415.)  And nothing links Scott to the decision to file charges against Bernard.  As Bernard has produced no evidence that Scott had anything to do with his arrest or prosecution, Scott is entitled to summary judgment on each of the other claims brought against her.

**B.   Defendant Grimes is Entitled to Summary Judgment on All Claims Brought Against Him**

Bernard has brought claims related to his arrest and prosecution against Grimes, the Chief of the Detroit Public Schools Police Department.   Bernard argues that "Chief Grimes command[ed] the arrest" and that the officers who arrested Bernard "were told to arrest [him] by their superior, The Chief [i.e., Grimes]." (Bernard Br. at 13, Pg. ID 336.)  But this argument is flatly contradicted by Bernard's own deposition testimony.  During his deposition, Bernard testified that Grimes did not arrest him and did not give the order that he be arrested. (*See* Bernard Dep. at 67-68, Pg. ID 416-417.)  In fact, Bernard testified that had "no personal knowledge of any conduct by [] Grimes" related to his arrest. (*Id.* at 68,

15

Pg. ID 417.)   Bernard further identified Defendant Crane, not Grimes, as the officer who gave the order to have him arrested.  (*See, e.g., id.* at 70, Pg. ID 419.) Because Bernard has not identified any evidence in the record tying Grimes to his arrest or prosecution, Grimes is entitled to summary judgment on each of the claims brought against him.

## C.   Bernard Claims Against DPS Fail as a Matter of Law

In his Complaint, Bernard brings at least two claims against DPS: "Prosecution Without Probable Cause" (Count IV) and "Municipal Liability" (Count VI).  Bernard also appears to name all Defendants, including DPS, in his claim for "retaliatory prosecution" (Count II).  But Bernard "cannot base his claims against [DPS] solely on the individual defendants' conduct because *respondeat superior* is not available as a theory of recovery under section 1983.'"  *Vereecke v. Huron Valley School Dist.*, 609 F.3d 392, 403 (6th Cir. 2010) (internal quotation marks omitted) (refusing to apply *respondeat superior* liability to school district under 42 U.S.C. § 1983); *see also Jenkins v. Rock Hill Local School Dist.*, 513 F.3d 580, 589 (6th Cir. 2008) ("The district court also did not err in granting summary judgment to the School Board…because there is no *respondeat superior* liability in actions under § 1983").  Instead of relying on the conduct of the individual Defendants, "[t]o hold [DPS] liable, [Bernard] must: "(1) identify [a] [DPS] policy or custom, (2) connect the policy to [DPS], and (3) show that his

16

particular injury was incurred due to the execution of that policy." *Vereecke*, 609 F.3d at 403.

Here, Bernard's claims against DPS fail in all three respects. Bernard's Complaint does not identify a "policy or custom" related to his arrest and prosecution, does not allege any facts that would support a connection between such a policy and DPS, and does not allege that his injuries were incurred due to the execution of such a policy. Likewise, he has offered no evidence on any of these three required elements of his claims against DPS. Accordingly, Bernard's claims against DPS fail as a matter of law.

**D.   The Remaining Officer Defendants (Richardson, Crane, Mays, and Granberry) Are Entitled to Summary Judgment**

Defendants Richardson, Crane, Mays, and Granberry (the "Officer Defendants") have also moved for summary judgment on all of Bernard's claims. (*See* Mot. at 17-24, Pg. ID 143-150.) They argue that they are entitled to qualified immunity and, in addition, that Bernard's claims fail due to a lack of evidence. The Court agrees that Bernard's claims against the Officer Defendants fail for one or both of these reasons.

**1.   The Officer Defendants Are Entitled to Qualified Immunity on Bernard's "Retaliatory Prosecution" Claim (Count II)**

In Count II of his Complaint, titled "Retaliatory Prosecution," Bernard claims that the acts of all the Defendants, including the Officer Defendants, "in

17

bringing a false and baseless charge against [him] were in retaliation for [his] attempted exercise of his First Amendment rights to petition the [Board]." (Compl. at ¶38.)  This count, therefore, relates to the Officer Defendants' alleged role in Bernard's arrest and prosecution.  The Officer Defendants argue that they are entitled to qualified immunity from this claim.  (*See* Mot. at 19-20.)  The Court agrees.

First, to the extent that each of the Officer Defendants participated in the arrest and prosecution of Bernard, they were acting within the scope of their discretionary authority. *See, e.g., Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) ("there can be no doubt that [a police officer] was acting in his discretionary capacity when he arrested [the plaintiff]"); *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) ("It is undisputed that [the police officers] were acting within their discretionary authority while tracking and arresting [the plaintiff]"). Bernard counters that while such functions may ordinarily fall within the scope of an officer's discretionary authority, that is not the case here because, Bernard claims, the Officer Defendants were ordered to arrest him. (*See* Resp. Br. at 13, Pg. ID 336.)  But Bernard cites no authority for the proposition that an officer loses the protection of qualified immunity if he is implementing an order from a superior.

Thus, the burden shifts to Bernard to show that "a constitutional right was violated," and (2) "that the right was clearly established at the time of the

18

violation." *Chappell*, 585 F.3d at 907. But, for all the reasons stated above with respect to Scott, Bernard has failed to carry his burden to show that he had a clearly established First Amendment right to read the employee file numbers during the meeting given the past disruption and chaos that reading those numbers had caused. Because Bernard has not demonstrated that his arrest and/or prosecution interfered with a clearly-established First Amendment right, the Officer Defendants are entitled to qualified immunity on Bernard's First Amendment retaliatory prosecution claim.

Moreover, even if the Officer Defendants were not entitled to qualified immunity on this claim, it would still fail for lack of evidence. As described below, there is simply no evidence that any of the Officer Defendants participated in his prosecution as Bernard claims.

### 2.   The Officer Defendants Are Entitled to Qualified Immunity on Bernard's "False Arrest/False Imprisonment" Claim (Count III)

In Count III of his Complaint, Bernard claims that the Officer Defendants "falsely arrest[ed] and detain[ed] [him] with no basis in fact or law to do so." (Compl. at ¶41.) The Officer Defendants are entitled to qualified immunity on this claim as well.

"An arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the

19

arresting agent." *Everson v. Leis*, 556 F.3d 484, 499 (6th Cir. 2009).  An arrest is lawful if supported by probable cause to believe that the arrestee has committed a crime. *See, e.g., United States v. Cunningham*, 520 Fed. App'x 413, 416 (6th Cir. 2013) (suspect's "arrest was lawful because it was supported by probable cause").  Here, the Officer Defendants could reasonably have concluded that they had probable cause to arrest Bernard for disturbing the peace and/or disturbing the Board meeting.

First, the officers could reasonably have relied on Scott's determination that Bernard was out of order for attempting to publicly reveal the personal employee file numbers.  Indeed, the Sixth Circuit has recognized that a reasonable officer may have probable cause to believe that a speaker is disturbing a public meeting when he "is determined to be out of order by the individual chairing the assembly." *Leonard v. Robinson*, 477 F.3d 347, 361 (6th Cir. 2007).  Second, the officers witnessed Bernard continue to loudly proclaim "you're going to get sued, you're going to get sued" as he was being escorted into the hallway, and the officers were on the receiving end of Bernard's insistence that they keep their hands off of him as they were forced to escort him from the meeting.  Given all of these circumstances – Scott's determination that Bernard was out of order for attempting to read the personal file numbers and Bernard's hostile reaction to the officers'

20

attempt to remove him – the officers could reasonably have concluded that probable cause existed to arrest Bernard.

Bernard counters that he is not guilty of disturbing the peace or disturbing the meeting – a conclusion that, he insists, is bolstered by the short video snippet from the meeting that the parties provided to the Court.  (*See* ECF #30.)  But the question with respect to the Officer Defendants' qualified immunity defense is not whether Bernard was *guilty* of disturbing the meeting; rather, the question is whether the officers could reasonably have concluded that *probable cause* existed to believe that Bernard had committed that crime.  *See, e.g., Regets v. City of Plymouth*, 568 Fed. App'x 380, 390 (6th Cir. 2014) (concluding defendant police officers were "entitled to qualified immunity [on false arrest claim] because they could have reasonably believed probable cause existed").  The answer to that question is yes because the video depicts Bernard engaging in conduct that could have led a reasonable officer to conclude that there was probable cause that Bernard was disturbing the peace and/or the meeting.   Thus, the Officer Defendants are entitled to qualified immunity with respect to Bernard's false arrest claim.

3.      **The Officer Defendants Are Entitled to Summary Judgment on Bernard's "Prosecution Without Probable Cause" Claim (Count IV)**

Bernard alleges in Count IV of his Complaint that the Officer Defendants "knew that [he] had not disrupted or acted disorderly" at the Board meeting and that the criminal charges against him therefore "constitut[ed] malicious prosecution." (Compl. at ¶¶ 43-44.) This claim fails for a lack of evidence.

> To prevail on a 42 U.S.C. § 1983 malicious prosecution claim premised on a violation of the Fourth Amendment, a plaintiff must prove four things: (1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was a lack of probable cause for the prosecution; (3) as a consequence of the prosecution, the plaintiff suffered a deprivation of liberty, as understood in Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.

*Halasah v. City of Kirtland, Ohio*, 574 Fed. App'x 624, 631 (6th Cir. 2014) (citing *Sykes v. Anderson*, 625 F.3d 294, 308-309 (6th Cir. 2010)). The Sixth Circuit has "long held that a police officer who did not make the decision to prosecute cannot be held liable for malicious prosecution." *Id.*

Here, Bernard has not come forward with any evidence that any of the Officer Defendants made, influenced, or participated in the decision to prosecute him, or that they interacted or consulted with the city prosecutor in any way related to the charges brought against him. *See Skousen v. Brighton High School*, 305 F.3d 520, 529 (6th Cir. 2002) (granting state trooper summary judgment on

22

malicious prosecution claim where plaintiff "offered no evidence…supporting her claim that [the trooper] caused her to be prosecuted" or that the trooper "had anything to do with [her] prosecution…after he submitted his report to the prosecutor's office").  Indeed, the entirety of Bernard's argument supporting his malicious prosecution claim is less than a single sentence, with no citation to any evidence in the record:

> In this case before the Court there was a criminal prosecution commenced against Bernard for allegedly disturbing the peace *and the Defendants clearly influenced the prosecutorial decision against him*.

(Resp. Br. at 21-22, Pg. ID 344-345; emphasis added).  Such a conclusory statement without any citation to the record is plainly insufficient to save Bernard's malicious prosecution claim.  For these reasons, Bernard's malicious prosecution claim against the Officer Defendants fails.

### 4.    The Officer Defendants Are Entitled to Summary Judgment on Bernard's Claim for Conspiracy (Count V)

In Count V of his Complaint, Bernard alleges that the Officer Defendants engaged in a conspiracy to "generat[e] a false [police] report" and "continu[e] [his] prosecution on the basis of disrupting a public meeting after the original charge of disorderly conduct was dismissed."  (Compl. at ¶¶ 46-47.)  This claim fails for a lack of evidence.

Bernard has not presented the Court any evidence that the police report he references in his Complaint actually contained any false statements. Indeed, Bernard failed to even attach the police report as an exhibit to response to the Officer Defendants' motion, and neither the report nor its contents are part of the record before the Court. Nor has Bernard presented any evidence that the Officer Defendants conspired to "continue" his prosecution after the original charge was dismissed. As discussed in detail above, there is simply no evidence in the record that the Officer Defendants played any role in the decision to prosecute Bernard at any time.

The only evidence of a conspiracy that Bernard identifies is his own testimony that the Officer Defendants supposedly told him in 2007 – two years before the underlying incident here – that they were going to "get him." (*See* Bernard Dep. at 84-87, Pg. ID 433-436.) But this stray comment, made years before Bernard was arrested, is not nearly enough to establish the existence of the conspiracy that Bernard alleges.

## CONCLUSION

For all of the reasons stated above, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF #22) is **GRANTED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: May 6, 2015

24

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 6, 2015, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113